**Abe Waxenberg and Jeanette Brady, Executrix of Last Will and Testament of Dave Brady, Deceased, Appellants, v. J. J. Newberry Company, Appellee.**

**Gen. No. 9,432.**

Opinion filed September 19, 1939. Opinion slightly modified and rehearing denied November 30, 1939.

KENWORTHY, SHALLBERG & HARPER, of Moline, for appellants; S. R. KENWORTHY and ROBERT J. MURPHY, of Moline, of counsel.

STAFFORD & SCHOEDE, of Rock Island, for appellee; C. V. PALLISTER, of New York, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On and before April 6, 1926, Abe Waxenberg and Dave Brady were the owners, as tenants in common of certain real estate improved by a 3-story building in the business district of Rock Island. On that day they entered into a written lease with a corporation, known as Steel's Consolidated, Inc. This lease with the exception of certain portions thereof not in any way material to the question involved in this proceeding is as follows:

"THIS INDENTURE, Made and Entered into this sixth day of April, A. D. 1926, by and between DAVE BRADY

and ABE WAXENBERG of the City of Moline, in the County of Rock Island and State of Illinois, parties of the first part, and STEEL'S CONSOLIDATED, INC. a corporation, organized under the Laws of the State of Delaware, with its principal place of business in the City of Buffalo and State of New York, and duly authorized and licensed to do business in Illinois, party of the second part, WITNESSETH:

"That the said parties of the first part, in consideration of the covenants and agreements on the part of the second part hereinafter set forth, do, by these presents, lease unto the said party of the second part, the following described property, to-wit:

"The first floor of the building situate at #1719–1721—Second Avenue, in the City of Rock Island, in the County of Rock Island and State of Illinois; and also the right to use the basement under said storeroom (except that part of the basement now occupied and used for the heating plant of the building), the lessors and their agents to have free access to such heating plant at all times; and also a room on the second floor of said building situate in the rear and on the east side of said second floor, which room is to be used for the storage of surplus stock; it being expressly understood and agreed by the said party of the second part, in consideration of the leasing of the premises above described, that under and for the whole term of this lease, said premises shall be used only for the purpose of carrying on a retail business generally known and designated as a "Five Cent to a Dollar Store," with such lines incident thereto as stores of that character generally carry and deal in.

"To HAVE AND TO HOLD the same unto the said party of the second part from the first day of October, A. D. 1926, until the thirtieth day of September, A. D. 1936; and the party of the second part, in consideration of said demise, does covenant and agree with the said parties of the first part, as follows:

"To pay as rent for said demised premises, the sum of FIFTY-SEVEN THOUSAND NINE HUNDRED and No/100 (57900.00) DOLLARS payable in monthly installments of Four hundred fifty-eight dollars and thirty-three cents ($458.33) during the first three years of the term of this lease; the sum of Four hundred Seventy-five dollars ($475.00) per month during the fourth and fifth years of said lease; and the sum of Five hundred (500) Dollars per month during the sixth, seventh, eighth, ninth and tenth years of said lease, each in advance, upon the first day of each and every month of said term, at the MOLINE STATE TRUST AND SAVINGS BANK, of Moline, Illinois

" . . .

"It is further understood that the said party of the second part may, on entering into said premises hereunder, or at any time during its occupancy hereunder, have the privilege from time to time of making such changes, alterations or improvements in said storeroom as it may think proper for the purpose of its business, but any such changes, alterations or improvements to be made in this connection, shall first be submitted to and be subject to the approval and consent of the said parties of the first part; and any such changes, alterations or improvements shall be at the sole cost and expense of the said party of the second part; it being expressly understood and agreed that in no event shall any changes or alterations be made, which will in any way damage the building or endanger its support or stability and that the said party of the second part will do nothing in this connection which will in any way involve or place liability on the parties of the first part and should the changes or alterations be of such a character as in the judgment of the said parties of the first part will warrant it, the said party of the second part, before beginning them, shall give to the parties of the first part, such bond or other indemnity as they may deem necessary and proper for

their protection and the protection of the property; and the said party of the second part covenants with the said parties of the first part, that at the expiration of the term of this lease, it will yield up the premises to the said parties of the first part, without further notice in as good condition as when the same were entered upon by the said party of the second part, loss by fire or inevitable accident and ordinary wear excepted.

"It is further agreed by the said parties of the first part that the party of the second part shall have the right to sublet said premises, or any part thereof, and/or assign this lease without the written assent of the said parties of the first part first had thereto.

" . . .

"If said party of the second part shall abandon said premises and not pay rent therefor, the same shall be re-let by the parties of the first part, for such rent, and upon such terms as said parties of the first part may see fit; and if a sufficient sum shall not be thus realized, after paying the expenses of such re-letting and collecting, to satisfy the rent above reserved, the party of the second part agrees to satisfy and pay all deficiency.

"The covenants and agreements herein shall extend to and be binding and obligatory upon the heirs, executors, administrators and assigns of the parties of the first part; and upon the succesors and assigns of the party of the second part."

Upon the execution of this lease, the lessee entered into possession of the leased premises and afterward assigned the lease to Steel's Stores, Inc., a corporation, which company went into possession of the premises and continued in possession until it was adjudicated a bankrupt. Thereafter Adrian Block became the duly elected and qualified trustee of said bankrupt and by virtue of an order of the bankruptcy court, Block, as trustee, on May 13, 1930 assigned the lease to the defendant herein, J. J. Newberry Company, a

corporation, which went into possession of the leased premises and regularly paid to the lessors the rent stipulated to be paid by the lease up to and including July 31, 1932. On June 30, 1930 the owners of the premises covered by this lease entered into another lease with the defendant for an apartment and storage room in the rear of the second floor of the building covered by the lease of April 6, 1926. This lease is as follows:

"THIS INDENTURE, of lease made and entered into this ninth day of June 1930 by and between Dave Brady and Abe Waxenberg, of the City of Moline, in the County of Rock Island and State of Illinois, hereinafter called the Landlord and J. J. Newberry Co. a corporation organized and existing under the Laws of the State of Delaware, with executive offices at 245 Fifth Ave., New York, N. Y. and duly authorized and licensed to do business in the State of Illinois, hereinafter called the Tenant.

"WITNESSETH that the said Landlord in consideration of the covenants and agreements on the part of the Tenant hereinafter set forth, does hereby lease unto the Tenant an Apartment and storage room in the rear of the second floor of the building known as #1719–1721 Second Avenue, in the City of Rock Island, County of Rock Island and State of Illinois; said apartment and storage room to be used by the Tenant for storage purposes and is more specifically described on the blue print which is attached hereto and made a part hereof.

"IT IS UNDERSTOOD AND AGREED that the Tenant may use the front stairway and hallway leading to the demised premises but must not obstruct said stairway and hallway, nor the stairway leading to the third floor of the building which is used by other tenants of the landlord.

"To HAVE AND TO HOLD from the first day of July 1930 until the thirtieth day of September 1936; a term of six years and three months.

"In consideration of said leasing the Tenant agrees to pay the Landlord the sum of $50.00 per month, payable on the first day of each month during the term of this lease and at expiration to yield up premises in as good condition as entered upon loss by fire or casualty, ordinary wear and depreciation excepted.

"It is further understood and agreed that the demised premises is to become a part of the premises covered by the lease made and entered into the sixth day of April, 1926, by and between the Landlord herein and Steel's Consolidated, Inc. which lease covers the first floor of the building herein before described together with the right to use the basement under said storeroom except that part of basement now occupied and used for the heating plant of the building together with a room on the second floor of the building situated in the rear and on the east side of said second floor, which lease has been assigned to the Tenant herein.

"It is further understood and agreed that the Tenant herein is given the privilege of erecting a boardwalk or penthouse on the roof so as to connect the second floor space described in the above mentioned lease with the apartment or storage space covered by this lease and may make whatever structural changes are necessary except tearing out walls to fix up the apartment and storage space hereby leased for the purpose of the business of the Tenant removing partitions if necessary as well as cutting a doorway in the rear of the apartment and a doorway in the second floor space covered by the original lease mentioned above.

"It is further understood and agreed that this lease is subject to all the terms and conditions contained in the original lease above referred to which was made on the sixth day of April 1926, between the Landlord herein and Steel's Consolidated, Inc. except so far as the space it covers, the rent to be paid and the other exceptions noted herein."

Upon the execution of this lease of June 30, 1930, the defendant went into possession of the premises therein described and erected a boardwalk or penthouse on the roof of the building so as to connect the second floor space described in the 1926 lease with the premises described in the 1930 lease and made certain structural changes in the building and used the premises described in the 1930 lease in connection with its business which it was conducting on the premises described in the 1926 lease. On October 2, 1932 the lessor Dave Brady died testate and the plaintiff Jeanette Brady is the executrix of his will and on the 9th day of December, 1932 this action at law was instituted by Abe Waxenberg and Jeanette Brady as executrix to recover from the defendant $1,500, being the rent stipulated to be paid under the 1926 lease for the months of August, September and October, 1932 at the rate of $500 per month.

The declaration of the plaintiffs consisted of two counts. The first count alleged the making of the 1926 lease, the assignment thereof to the defendant and possession of the defendant of the premises for the period for which recovery is sought. The second count, in addition to the foregoing allegations contained in the first count set forth the making of the 1930 lease and concluded that by so doing defendant adopted the lease of 1926. The defendant plead the general issue and filed a special plea to each count of the declaration. The plaintiffs filed a similiter to the general issues. The special plea to each count of the declaration averred that on July 9, 1932 the defendant assigned the lease of 1926 to one Edward Easley of Mountain Lakes, New Jersey, set forth the assignment in *haec verba* and alleges that prior to August 1, 1932 and on or about July 9, 1932 it went out of possession of the premises and at that time put said Edward Easley in possession thereof, and alleges that defendant has not been in possession since it went out of possession

on or about July 9, 1932. To the special plea to the second count of the declaration, the plaintiff filed a demurrer which was overruled and the plaintiffs abided their demurrer. To the special plea of the defendant filed to the first count, the plaintiffs filed three replications, in the first it traversed the allegation that defendant's assignee, Easley, went into possession and traversed the allegation that the defendant went out of possession. To this replication the defendant filed a similiter. The second replication to the special plea of the defendant to the first count of the declaration alleged that the assignment to Easley was colorable and fictitious. To this replication the court sustained a demurrer. The third replication to the special plea of the defendant to the first count charges in substantially the language of the second count of the declaration, the making of the 1930 lease and concludes that thereby defendant adopted the lease of 1926. To this replication the court also sustained a demurrer. With the record in this condition, the defendant moved for judgment on the pleadings. This motion was sustained and judgment rendered in bar of the action and for costs and the plaintiffs appeal.

It is conceded by counsel for appellants that it is the law that an assignee of a lease who has entered into no contractual relationship with the lessor is not liable for rent after he has assigned his lease and gone out of possession of the leased premises. Counsel state that while they have no quarrel with this rule of law, it should not be extended to apply to the situation shown to exist by the pleadings in the instant case and insist that here appellee assumed the obligations of the 1926 lease, first, by the provisions of the original lease to the effect that its covenants would be binding upon the assigns of the lessee; second, by the recitals in the 1930 lease to the effect: (a) that the premises therein described were to become a part of the premises covered by the original lease of 1926; (b) that the 1930

lease was subject to all the terms and conditions contained in the original lease, except as to the space it covers, the rent to be paid and the other exceptions noted therein, and (c) that the lessee was granted the privilege of making certain structural changes in the premises covered by the 1926 lease.

In support of their contention, counsel cite *Nachbour v. Wiener*, 34 Ill. App. 237 and insist that the situation in the instant case is analogous to the situation there. In that case it appeared that the original lease was in writing. By verbal agreement the landlord erected additional premises especially for the use of the tenant and additional rental was agreed upon. The action was by the landlord to hold the tenant liable for the additional monthly rent. The tenant conceded that it was bound by the terms of the written lease but insisted it was not liable under the verbal agreement by reason of the statute of frauds. In holding that the tenant had not surrendered possession of the premises especially erected by the landlord for the use of the tenant and to which the landlord had no access except from an alley at the rear, the court said: "The changes made in the building at the request of appellant (the tenants) made it entirely a new and different room from the one they rented and they have no power or authority, under their lease or otherwise to destroy the unity or identity of this room afterward. . . . The new arrangement was, in effect, a new leasing upon the basis of the old lease, upon an increased rental in consideration of the improved character of the building." Not so in the instant case. There the tenant continued to occupy the room covered by the original lease and while he did so, the new part erected by the landlord especially for him was of no value to the landlord. In the instant case appellee paid for the improvements and has retained the possession of the premises covered by its lease. Here the physical aspects of the premises covered by the 1926 lease re-

main substantially unchanged. The facts therefore differ widely in the two cases.

*Consolidated Coal Co. v. Peers,* 166 Ill. 361, was an action in assumpsit by the owners of coal underlying certain land in Madison county to recover from the Consolidated Coal Company certain rent which the declaration averred accrued to them by virtue of the provisions of a lease executed by them and the Abbey Coal and Mining Company for a term of 25 years with a covenant of that company to pay an annual royalty of at least $1,200. The declaration charged that the Abbey Company entered upon the premises, sank a shaft and operated a mine thereon until August 11, 1886, when, by its deed of that date, it assigned the lease and transferred the coal underlying said tracts of land, together with the rights and privileges that had been assured to it by its lease with the plaintiffs and subject to the agreements therein mentioned to be performed by it as lessee, to the Consolidated Coal Company. The declaration alleged that the defendant took possession of the property under its conveyance from the Abbey Company and was in possession during the period plaintiffs sought to recover rent. To this declaration the defendant plead that on November 28, 1887 it assigned and set over to Jacob Lasurs the lease in the declaration mentioned and all the leasehold interest and estate thereby conveyed and put Lasurs into possession of the mine and premises in the lease described and traversed the allegation that it was in control and enjoyment of the premises during the time for which plaintiffs sought to recover. Plaintiffs moved to strike this plea. Counsel for the respective parties, as well as the trial and Supreme Courts, treated this motion as a demurrer and it was sustained by the trial court. In reversing that ruling the Supreme Court said that where there are express covenants in a lease which run with the land, such as to pay rent, the lessee is bound to their performance by

reason of his being both in privity of contract and privity of estate with the lessor, and the privity of contract continues to the end of the term but by an assignment of the term the privity of estate is terminated and that between the lessor and the assignee of the term there is privity of estate, and by reason of such privity the assignee is liable for breaches of any express covenant of the lease which runs with the land or term and which occur while such privity continues to exist. The court then stated that the plea impliedly admitted the making of the lease, the covenant of lessee to pay the stated rents or royalties, the assignment to the defendant and possession by it until it assigned the lease to Jacob Lasurs. That the plea also alleged that the defendant put Lasurs in possession of the leased premises and traversed the allegation in the declaration to the effect that the defendant was in possession or had the use, control and enjoyment of the premises during the period for which rent was sought to be recovered. In holding that this plea presented a complete legal defense to the suit, the court said: "The rule is, that as the liability of the assignee grows out of privity of estate, and that only, it ceases when that privity ceases to exist, and each successive assignee is liable for only such breaches of covenant as occur while there is privity of estate between him and the lessor." (Citing cases and authorities.) It was insisted by the plaintiffs, (the lessors), that the assignment by the Abbey Company of its lease to the defendant was made "subject to the agreements therein mentioned to be performer by said lessee" and that this provision amounted to a covenant on the part of the defendant to pay the accruing rents or royalties for the residue of the term to the lessors in the assigned lease, in other words, that such provision showed a privity of contract between plaintiffs and the defendant. In holding otherwise the court said: "The expression, 'to be performed by said lessee', does not refer to appellant (the defendant).

The Abbey Coal and Mining Company is the only 'lessee' mentioned in the declaration or in the deed set forth therein. Said company is manifestly the 'lessee' designated. The words, 'to be performed by said lessee' then, are merely descriptive of the agreements, intended to be pointed out by the deed and the whole clause relied on simply means 'subject to the agreements of the lessee mentioned in the lease.' '' The court then referred to and commented upon several authorities and held that these words did not impose a personal contractual obligation on the assignee and concluded: ''There are several considerations that lead us to the conclusion that the words 'subject to the agreement,' etc., used in the deed of August 11, 1886, do not import a covenant on the part of the assignee to personally pay all rents or royalties that may accrue during the term: First, the weight of authority is otherwise; second, the rule deducible from the decisions of this court in analogous cases is otherwise; third, as has been suggested in some of the cases, it is the duty of a party who intends by a deed to bind another by a covenant in a former formal instrument, to insert such covenant in the deed in such distinct and intelligible terms as that the party to be bound cannot be deceived, and not call upon the court to infer such a covenant from equivocal words, which were probably understood by one party in a sense different from that sought to be ascribed to them by the other; fourth, the assignee always takes the estate *cum onere*,—that is, he takes and holds it subject to the agreements agreed to be performed by the lessee, and it is difficult to perceive why, upon sound legal principle, the mere expression of this legal implication should create a personal contractual obligation which the legal implication itself would not create; fifth, it is the public policy of this State that the transmissibility of property should be free and unfettered, and to hold, from mere inference and in the absence of an express and plain covenant, that the assignee of a lease and his

heirs will be personally liable for the payment of reserved rents which may accrue perhaps hundreds of years after such assignee has sold and assigned the lease to a third person, would tend to make leasehold estates unsalable and tend to prevent the transfer of them to others.''

In our opinion the holding in the *Peers* case is decisive of the questions presented upon this appeal. There is nothing ambiguous in the provisions of either the 1926 or the 1930 lease and there is no language therein or in the declaration concerning the assignment to appellee from Block, the trustee in bankruptcy, which says or could be construed into saying that appellee assumed the rent obligation of the original lease. There being no express or implied assumption by appellee of the obligations of the lease of 1926, then, as between appellants and appellee, there is no privity of contract and appellee was only liable for rent while, as between the parties, privity of estate existed. Upon appellee assigning the lease and going out of possession, his liability for rent terminated. The trial court therefore did not err in overruling appellants' demurrer to the special plea to the second count of the declaration, nor did the trial court err in sustaining a demurrer to the second replication to the special plea filed by appellee to the first count of the declaration. It was defective in not stating facts but simply conclusions of the pleader. Furthermore, ''An assignee may always discharge himself from liability for subsequent breaches, both as regards rent and other covenants, by assigning over: even though it be done for the express purpose of getting rid of his responsibility.'' Taylor Landlord and Tenant, 5th Add. p. 333, sec. 452. Nor was there any error in sustaining appellee's demurrer to the third replication to appellee's plea to the first count of the declaration. The allegations of this replication are a clear departure from the case made by the first count. *Moore v. National Fire Ins. Co.*, 275 Ill. App. 1.

In our opinion *Springer v. De Wolf,* 194 Ill. 218 does not sustain appellants' contention. There Warren Springer expressly assumed, in the conveyance of the leasehold, the other obligations of the lessee and in the course of its opinion the court said: "The appellant received a conveyance of the leasehold estate, received possession of such estate and assumed to pay the rent. There was thereby established between the appellant and the appellee a privity of contract and a privity of estate. That privity of estate was terminated by the conveyance and transfer of possession of the demised premises to McGinniss. But the privity of contract—the contractual liability of the appellant—was not thus terminated. No valid reason is apparent to us why the appellant should not pay the rent he assumed." We have considered the exhaustive brief and reply brief submitted by counsel for appellants and have read the other cases upon which they rely. These other cases do not, in our opinion, sustain their contention.

The record discloses, however, that appellee filed the general issue to both counts of the declaration, thereby traversing every material allegation of fact therein. By so doing it estopped itself from questioning its sufficiency on demurrer and until the general issue was withdrawn, issues of fact remained undisposed of. Issue had also been joined upon appellants' first replication to appellee's special plea to the first count of the declaration. When a plea is filed and an issue formed, all right to test the sufficiency of any precedent portion of the pleadings is waived unless the declaration be so defective that it will not sustain a judgment and that may be taken advantage of by a motion in arrest of judgment. *Schofield v. Settley,* 31 Ill. 515; *Keeler v. Campbell,* 24 Ill. 287; *Merker v. Belleville Distilling Co.,* 122 Ill. App. 326. In rendering judgment upon the pleadings while issues of fact remained undisposed of necessitates a reversal of this judgment and a remandment of this cause.

*Reversed and remanded.*